MORAN TOWING & TRANSPORTA-TION CO., Inc., as assignee of Time, Inc., owner of THE Barge C. L. STILL-MAN, Libelant,

v.

CONNERS–STANDARD MARINE COR-PORATION, Respondent.

United States District Court
S. D. New York.

Feb. 15, 1960.

Burlingham, Hupper & Kennedy, New York City, for libelant (Robert A. Feltner, New York City, of counsel).

Purdy, Lamb & Catoggio, New York City, for respondent (Vincent Catoggio, New York City, of counsel).

THOMAS F. MURPHY, District Judge.

This proceeding is brought by the assignee of a barge owner for damages to the barge resulting from its grounding in the New York State Barge Canal on June 6, 1956.

Libelant's claim is that the barge was crowded out of the channel by the two-barge tow of respondent's tug Gramercy which was proceeding in an opposite direction on the wrong side of the channel. No contact between the two tows is claimed. At 2:00 P. M., the time of the accident, the weather was clear, the wind and current negligible. The scene of the accident is an "S" shaped bend in the Mohawk River section surrounded by high ground.

The assignor's barge, C. L. Stillman, was eastbound, being pushed by the tug Harriet Moran, owned by libelant. The Stillman is a steel barge 211 feet long, 42 feet wide, and was laden with grain. The Harriet Moran is a 1,000 horsepow-ered diesel steel tug 89 feet long, 25 feet wide and had a hydraulic lift on its pilot house capable of raising it 21 feet above the water level, and was so raised at the time. It pushed the barge by placing its stem into a recess in the stern of the barge and was secured to the barge by cable strapping. The tug Gramercy was westbound with two wooden barges in tow, tandem style. The Gramercy is a wooden 150 horsepowered diesel tug 63 feet long and 18 feet wide. It was towing two wooden barges, one light and one laden, on hawsers. The barges were secured to each other by double lines and were one to two feet apart. There was a dispute as to the length of the hawsers from the stern of the tug to the first barge, libelant claiming it was 75 feet and the respondent 40 feet to 50 feet. It has been admitted by respondent that

the Gramercy gave no bend signal as it entered the bend.

We accept the testimony of libelant's witnesses and reject the testimony of respondent's as to the cause of the accident and find as a fact that about one-quarter of a mile before the Harriet Moran entered the "S" bend it reduced its speed to half-speed and was making thereafter about four to five miles per hour over the ground; that it sounded its bend whistle, to which there was no response from the Gramercy, and proceeded at a speed of four to five miles per hour over the ground into the first turn favoring the starboard side of the channel. Soon thereafter the barge mate on the bow of the Stillman signaled to the master of the Harriet Moran of the approach of something from the east. Shortly thereafter a single blast was heard from the Gramercy, which was answered by one blast of the Harriet Moran's whistle and the Gramercy came into view. At this point the Gramercy with her tow was three-quarters of the way over in the channel on her port side and making about three miles per hour. The two barges that it had in tow were on a hawser about 70 feet in length. The distance between the two flotillas at the time of sighting each other seems to have been between 1,000 feet and 1,500 feet. The Gramercy then changed its course to starboard but such maneuver caused its tow to veer out to the left in the direction of the Harriet Moran, which in turn forced the Harriet Moran and the Stillman more to the right and out of the channel in order to avoid collision. When respondent's last barge passed the tug Harriet Moran they were separated by only seven or eight feet. As a result of crowding the Harriet Moran and its tow Stillman out of the channel it ran aground, although it was able to free itself without assistance. It was this grounding that caused the damage complained of.

It is true that libelant first claimed that it was respondent's tug Dynamic that crowded it and caused the grounding, but this was explained satisfactorily since the crew obtained the name from the lock tender after the incident. It seems to be of no importance anyway since respondent has admitted that it was its tug Gramercy that was involved.

On all the credible evidence we find that respondent was at fault in at least two respects—first, its failure to sound a bend signal and, secondly, failure to keep to the right of the center line of the channel, and that the proximate cause of the grounding was the latter of these two faults. We find further that libelant was not at fault in any manner.

Decree for libelant.